IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **HILTON MINCY,** | : | CIVIL ACTION NO. 1:20-CV-717 |
| | : | |
| Plaintiff | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| **JOHN E. WETZEL,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

**MEMORANDUM**

This is a prisoner civil rights case under 42 U.S.C. § 1983, in which plaintiff Hilton Mincy alleges that the handling of the COVID-19 pandemic by the prison in which he is incarcerated violates the Eighth Amendment. Defendants have moved to dismiss. The motion will be granted.

### I. Factual Background & Procedural History

Mincy is incarcerated in the State Correctional Institution in Huntingdon, Pennsylvania ("SCI-Huntingdon"), and has been incarcerated in that facility at all times relevant to this case. Mincy alleges that defendants—various individuals and entities connected to SCI-Huntingdon and the Pennsylvania Department of Corrections ("DOC")—have implemented inadequate policies and practices to combat the COVID-19 pandemic and have otherwise failed to prevent and mitigate the spread of the virus. (Doc. 69 ¶ 13).

Mincy points to several policies implemented by SCI-Huntingdon that he asserts are inadequate to combat the pandemic. First, he alleges that SCI-Huntingdon has not implemented mandatory COVID-19 testing for all corrections

staff and inmates. (Id. ¶¶ 14-15, 27). Second, he alleges that SCI-Huntingdon has a policy of requiring staff members to voluntarily report any COVID-19 symptoms, and that, if they show any symptoms, they are required to self-isolate and use sick time. (Id. ¶ 16). Third, he alleges that SCI-Huntingdon allows employees who have tested positive for COVID-19 to return to work after they are no longer showing symptoms. (Id. ¶ 17). Fourth, he alleges that SCI-Huntingdon allows inmates who have tested positive for COVID-19 to return to the prison's general population after they have stopped showing symptoms. (Id. ¶ 18). Fifth, he alleges that SCI-Huntingdon does not require masking or social distancing during showers. (Id. ¶ 21). Sixth, he alleges that SCI-Huntingdon allows interactions between cohorts of prisoners that are supposed to be separated in accordance with the DOC's COVID-19 prevention guidelines and does not follow the DOC's quarantine protocols. (Id.) Seventh, he alleges that members of the prison's staff are allowed to serve food without wearing personal protective equipment. (Id.)

Mincy also asserts that individual employees at SCI-Huntingdon do not follow the "best practices" recommended by the Centers for Disease Control and Prevention ("CDC"), because they spit tobacco and sunflower seeds in the prison, do not properly wear personal protective equipment, and act "without seriousness to contracting and spreading" COVID-19. (Id. ¶ 22). Mincy alleges that SCI-Huntingdon's inadequate policies combined with the actions of SCI-Huntingdon's employees necessitated a prison-wide lockdown on April 12, 2020 and allowed COVID-19 to continue to spread throughout the facility. (Id. ¶¶ 24-25).

2

In April 2020, Mincy allegedly experienced symptoms that were consistent with COVID-19—including a fever that lasted several days, back aches, chills, loss of taste and smell, extreme fatigue, shortness of breath, and irregular heartbeat—but allegedly was never tested for the virus. (Id. ¶¶ 30-31). Mincy also asserts that he experienced COVID-19 symptoms in June 2020. (Id. ¶ 33). At that point, staff at SCI-Huntingdon tested him for the virus, but allegedly failed to quarantine him from the rest of the prison population. (Id. ¶ 34). Mincy does not state whether the June 2020 COVID-19 test was positive. (See id.)

Mincy initiated the present case through the filing of a complaint on April 30, 2020. He filed an amended complaint on July 15, 2020. On March 2, 2021, the court granted Mincy's request for leave to file a second amended complaint, but dismissed Defendants Tom Wolf and Rachel Levine pursuant to the screening provision of 28 U.S.C. § 1915(e)(2)(B)(ii). Mincy's second amended complaint was filed on the same day and remains the operative pleading in this case.

In the second amended complaint, Mincy raises claims under § 1983 for deliberate indifference in violation of the Eighth Amendment and denial of the right to equal protection in violation of the Fourteenth Amendment. He seeks injunctive relief requiring SCI-Huntingdon to (1) provide him with viral and antibody tests; (2) provide all other inmates with viral tests; and (3) provide all staff members with viral tests. He also seeks injunctive relief to "permanently close" SCI-Huntingdon, a declaratory judgment, nominal damages, general damages for the cost of bringing this lawsuit, and punitive damages of $1 million.

Defendants moved to dismiss the second amended complaint on March 16, 2021, and filed a brief in support of the motion on March 30, 2021. Defendants argue that dismissal is appropriate because Mincy fails to allege deliberate indifference and because he fails to allege that defendants Kohler, Walters, House, Loy, and Goss were personally involved in any alleged constitutional violation. Mincy opposed the motion to dismiss on April 28, 2021.

On August 27, 2021, Mincy moved for leave to file a third amended complaint. Shortly thereafter, the court denied several pending motions for sanctions that Mincy had filed as well as a request for leave to serve additional interrogatories. Defendants opposed the motion for leave to amend on September 15, 2021, and moved to stay discovery on September 17, 2021. Mincy moved for a certificate of appealability as to the denial of his motions for sanctions and request to serve additional interrogatories on October 4, 2021.

On October 25, 2021, Mincy docketed a letter in which he described several incidents by SCI-Huntingdon officials that he characterized as retaliation for his refusal to be vaccinated against COVID-19. Mincy then filed a motion to compel discovery on October 28, 2021. With the exception of the motion to compel discovery, all of the pending motions are ripe for the court's disposition.

## II.  **Legal Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light

most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556. A claim is facially plausible when the plaintiff pleads facts "that allow[]

5

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

Courts must liberally construe complaints brought by *pro se* litigants. Sause v. Bauer, 585 U.S. __, 138 S. Ct. 2561, 2563 (2018). *Pro se* complaints, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

### III. Discussion

#### A. Mincy's Second Amended Complaint Fails to State a Claim

We first consider defendants' motion to dismiss Mincy's second amended complaint. Mincy's claims in this case are brought under 42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. 42 U.S.C. § 1983. The statute is not a source of substantive rights, but serves as a mechanism for vindicating rights otherwise protected by federal law. See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a Section 1983 claim, plaintiffs must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law." Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

There is no question that defendants in this case were acting under color of state law. The only question is whether Mincy has pled plausible violations of his Eighth and Fourteenth Amendment rights.

To state a claim for deliberate indifference to inmate health or safety in violation of the Eighth Amendment, a plaintiff must allege (1) an objectively serious risk to inmate health or safety; and (2) that defendant prison officials were deliberately indifferent to the risk through their acts or omissions. Porter v. Pa. Dep't of Corr., 974 F.3d 431, 441 (3d Cir. 2020) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).

Prison officials are deliberately indifferent when they know of and disregard excessive risks to inmate health or safety. Id. (citing Farmer, 511 U.S. 837). This is a subjective standard: "the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." Mammana v. Fed. Bureau of Prisons, 934 F.3d 368, 373 (3d Cir. 2019) (quoting Woloszyn v. Cty. of Lawrence, 396 F.3d 314, 321 (3d Cir. 2005)).

It is undisputed that Mincy pleads an objectively serious risk to inmate health or safety, as COVID-19 clearly presents such a risk. We find, however, that Mincy has failed to plead facts suggesting that defendants have been deliberately indifferent to that risk. To the contrary, the DOC has adopted numerous policies to prevent the spread of COVID-19 within its facilities and to mitigate the harm caused by the virus. The DOC offers on-site vaccination against COVID-19 to all inmates and staff at every state correctional institution in Pennsylvania. *COVID-19 and the DOC*, DEPARTMENT OF CORRECTIONS, https://www.cor.pa.gov/Pages/COVID-19.aspx

(last visited Nov. 1, 2021).[1]  In-person visits were suspended entirely from March 13, 2020 to May 2021, and have only resumed at select facilities since then.  Id.  Visitors that are allowed in prisons are given temperature checks, screened for COVID-19, and required to wear masks.  Id.

All inmates in the DOC system are screened for COVID-19 when they leave a DOC facility and when they return to the DOC facility.  (Id.)  The DOC has also designated SCI-Smithfield as a dedicated reception site for all incoming male inmates.  (Id.)  At SCI-Smithfield, the inmates are "screened, tested and monitored for COVID-19 before being sent through the system."  (Id.)  Any inmates with flu-like symptoms are not accepted into the system.  (Id.)  Inmates are provided disposable masks and are strongly encouraged to use them.  (Id.)  They are provided materials to clean their cells regularly.  (Id.)

The DOC has also implemented safety measures with regard to its staff.  All individual staff members entering a facility are screened for COVID-19, and any individual who is exhibiting a fever of at least 100 degrees or any signs of cold or flu is not allowed to enter the facility.  (Id.)  Masks are required for all staff members in DOC facilities.  (Id.)  Staff are also provided personal protective equipment.  (Id.)

The DOC regularly holds town hall meetings with its inmates to review sanitation guidelines and COVID-19 protocols.  (Id.)  The DOC also makes soap,

---

[1] The court may consider information from the DOC's website because it is a matter of public record.  Mayer, 605 F.3d at 230.  The court may also take judicial notice of the information because it has been made publicly available by a government entity.  Vanderklok v. United States, 868 F.3d 189, 205 n.16 (3d Cir. 2017).

masks, towels, and anti-bacterial spray available throughout its facilities, and soap is provided to inmates free of charge. (Id.) Radios and other equipment in DOC facilities are cleaned throughout the day. (Id.) A review of these procedures indicates that defendants have not been deliberately indifferent to the threat posed by COVID-19.

Other courts in this district have reached a similar conclusion with respect to claims brought by other inmates at SCI-Huntingdon. See Ali v. Kauffman, No. 1:20-CV-1462, 2021 WL 3929741, at *3-4 (M.D. Pa. Sept. 2, 2021) (Kane, J.) (concluding that inmate failed to allege deliberate indifference to danger posed by COVID-19 based on numerous preventive measures adopted by DOC and SCI-Huntingdon); Wilkins v. Wolf, No. 1:20-CV-2450, 2021 WL 1578250, at *7 (M.D. Pa. Apr. 22, 2021) (Rambo, J.) (same); Bevins v. Kauffman, No. 1:20-CV-2012, 2021 WL 322168, at *5 (M.D. Pa. Feb. 1, 2021) (Kane, J.) (same). We agree with the *ratio decidendi* of these courts and find that Mincy has failed to plead deliberate indifference in violation of the Eighth Amendment.

Mincy's second amended complaint likewise fails to state an Eighth Amendment claim upon which relief may be granted to the extent that it is based on SCI-Huntingdon staff members' failure to comply with DOC policies and CDC guidelines. The actions that Mincy alleges by defendants—failing to test Mincy for COVID-19 on one occasion, spitting tobacco and sunflower seeds in the prison, failing to properly wear personal protective equipment, and acting "without seriousness" with regard to the spread of COVID-19—simply do not rise to the level of Eighth Amendment violations.

Finally, Mincy's equal protection claim fails to state a claim upon which relief may be granted. Mincy alleges that he was denied equal protection because defendants "denied him the rights, privileges or laws (statutes, codes, executive orders, proclamations, policies) of the Commonwealth of Pennsylvania." (Doc. 69 at 19). Mincy does not allege any facts to support this claim, and it appears from the face of the second amended complaint that he was treated equally to other similarly situated inmates in the DOC system. We will therefore dismiss this claim.

### B. Mincy's Proposed Amended Complaint Suffers from the Same Defects as the Second Amended Complaint

Plaintiffs seeking to amend a complaint more than twenty-one days after service of a responsive pleading must obtain the consent of the opposing party or leave of the court to do so. FED. R. CIV. P. 15(a)(1)(B). "The court should freely give leave when justice so requires," FED. R. CIV. P. 15(a)(2), but leave to amend may be denied when there is undue delay, bad faith, dilatory motive, prejudice, or futility. Spartan Concrete Prods., LLC v. Argos USVI, Corp., 929 F.3d 107, 115 (3d Cir. 2019) (citing Shane v. Fauver, 213 F.3d 113, 115 (3d Cir. 2000)).

We will deny Mincy's motion for leave to file a third amended complaint because the proposed amended complaint suffers from the same defects as Mincy's second amended complaint. Like his second amended complaint, Mincy's proposed third amended complaint points to several policies implemented by SCI-Huntingdon that Mincy asserts are inadequate to combat the pandemic. First, he alleges that SCI-Huntingdon has not implemented mandatory COVID-19 testing for all corrections staff and inmates. (Doc. 94 at 27). Second, he alleges that SCI-

10

Huntingdon has a policy of requiring staff members to voluntarily report any COVID-19 symptoms. (Id.) Third, he alleges that SCI-Huntingdon allows employees who have tested positive for COVID-19 to return to work after they are no longer showing symptoms. (Id.) Fourth, he alleges that SCI-Huntingdon has refused "to mandate that all inmates at SCI-Huntingdon receive viral and antibody tests in order to ascertain their accurate infection status" and instead have "sought to administer vaccinations and sweep the matter under the rug in order to conceal who was infected." (Id. at 28). Fifth, he alleges that SCI-Huntingdon does not require masking or social distancing during showers. (Id. at 30). Sixth, he alleges that SCI-Huntingdon allows interactions between cohorts of prisoners that are supposed to be separated in accordance with the DOC's COVID-19 prevention guidelines and does not follow the DOC's quarantine protocols. (Id.) Seventh, he alleges that members of the prison's staff are allowed to serve food and interact with inmates without wearing personal protective equipment. (Id.)

Mincy's third amended complaint also alleges that he experienced COVID-19 symptoms and was not tested for the virus, which is again consistent with the allegations in his second amended complaint. (Id. at 22-24). He alleges that the failure to test him occurred because SCI-Huntingdon has a policy of not testing inmates for COVID-19 so that it can underreport the true number of infections in the prison. (Id. at 22-24).

Like his second amended complaint, Mincy's third amended complaint would be subject to dismissal because publicly available information on the DOC's response to the COVID-19 pandemic shows that DOC officials, including

11

defendants, have not been deliberately indifferent to the risks posed by the pandemic. We will therefore deny Mincy's motion for leave to file a third amended complaint.

### C. Further Amendment Would Be Futile

Having determined that the motion to dismiss Mincy's second amended complaint will be granted and that Mincy's proposed third amended complaint will not be allowed, we turn our attention to whether Mincy will be given any further opportunities to amend his complaint. Before dismissing a civil rights complaint for failure to state a claim upon which relief may be granted, a district court must permit a curative amendment unless the amendment would be inequitable or futile. Phillips, 515 F.3d at 245. Leave to amend may be denied based on undue delay, bad faith, dilatory motive, prejudice, or futility. Talley v. Wetzel, 15 F.4th 275, 285 (3d Cir. 2021) (citing Spartan Concrete Prods, 929 F.3d at 115). Proposed amended complaints are futile when they would not withstand motions to dismiss. Id.

Mincy has already filed multiple amendments or supplements to his original complaint, some of which appear to be duplicative. (See Docs. 16, 45, 54, 69). We will deny further leave to amend as futile for two reasons. First, as noted above, publicly available information on the DOC's website shows that DOC officials have not been deliberately indifferent to the risks posed by COVID-19. Second, any amended complaint would be subject to dismissal because Mincy has refused to be

vaccinated against COVID-19.[2]  Simply put, Mincy "cannot refuse a vaccine that would largely ensure his protection from COVID-19 and then allege that prison officials are failing to ensure his protection from COVID-19."  Ali v. Rivello, No. 1:20-CV-1462, 2021 WL 5003406, at *3 (M.D. Pa. Oct. 28, 2021); cf. Garrett v. Murphy, __ F.4th __, No. 20-2719, No. 21-2810, 2021 WL 5026787, at *10 (3d Cir. Oct. 29, 2021) (rejecting claim that COVID-19 placed plaintiff in immediate danger of physical harm because "effective COVID-19 vaccines are widely available").  The DOC has offered Mincy an effective means of protecting him from COVID-19, and Mincy has refused it.  The Eighth Amendment does not require Defendants to protect Mincy from COVID-19 in the exact manner that he chooses.  Cf. e.g., Monmouth Cty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987) (holding that "mere disagreement" as to proper medical treatment does not support a claim for deliberate indifference under the Eighth Amendment).

**IV.   Conclusion**

We will grant defendants' motion to dismiss (Doc. 74) and dismiss this case with prejudice.  Mincy's motion for leave to file a third amended complaint (Doc. 94) will be denied.  Defendants' motion to stay discovery, Mincy's motion for certificate

---

[2] Mincy acknowledged that he has not been vaccinated against COVID-19 in his October 25, 2021 letter to the court.  (See Doc. 111).  The court may consider this letter in resolving defendants' motion to dismiss because it is part of the record of this case.  See Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).  Furthermore, because Mincy himself has provided this information, he is on notice that it may be considered.  See Brown v. Daniels, 128 F. App'x 910, 913 (3d Cir. 2005).

of appealability, and Mincy's motion to compel discovery (Docs. 102, 108, 112) will be denied as moot. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:     November 3, 2021